Henderson W. Morrison, J.
The defendants are charged with violating subdivision 1 of section 314 of the Fish and Game Law (Conservation Law, art. 4) of the State of New York in that they had in their possession and did traffic in 78 bushels of hard clams, less than one inch in thickness, commonly referred to as ‘‘ seed clams. ’ ’ Defendants have moved to suppress the evidence seized by the conservation officers of the New York State Department of Conservation upon the ground that the arrest, search and seizure were illegal and in violation of defendants’ constitutional rights.
At a hearing held before this court to determine the issue presented, the complainant, a conservation officer, testified that on January 17, 1966, at about 9:30 p.m., he had received a telephone call from an informant advising him that a large amount *241 of “ seed clams ” were located at 66 Hayes Street, Freeport, Long Island, New York, that they were going to be moved that night, and that they were going to be shipped to Pennsylvania.
Testimony was elicited that this informant was known to the complainant and had on prior occasions furnished the complainant reliable information regarding the illegal trafficking in seed clams, and that on at least seven or eight prior occasions, the information furnished by this informant had led to the confiscation of contraband, and that these in turn had led to civil compromises of the charges made in those cases; that this informant had never been found to be unreliable.
Complainant testified that as a result of the information he had received from this informant, he and two fellow conservation officers proceeded to 66 Hayes Street, Freeport, Long Island, New York, where one of the defendants resided. The officer arrived in the vicinity at about 10:15 p.m., where they remained for approximately one and one-half hours. They observed a red panel truck backed up to a garage at the rear of the property and located at the end of a driveway. Officer Gunderson testified that approximately 11:34 p.m., he and the other officers stood on the sidewalk at the end of the driveway, which he described as ‘ public property, ’ ’ and there he observed burlap bags unloaded from the truck by a person he later identified as the defendant Burkhardt, and handed to the defendant Wertz, whom he could see and whom he had previously known. Both of the defendants hold licenses from the Department of Conservation to dig for clams.
After making these observations for a few minutes, the officers walked up the driveway to the front of the truck where they could see Burkhardt and could see seed clams in the open bags. Officer Gunderson, observing that there were no identifying tags on the bags, as required by law, asked Burkhardt where the tags ” were, but received no answer. He asked the defendant Wertz what he was “doing with all the seed here.” Wertz replied, “ Everybody is doing it, and I’m getting my share.” Concededly, the officers were told that they were on private property and disregarded the obvious implication to remove themselves. Instead, Officer Gunderson measured a quantity of the clams seized and arrested the defendants.
Section 380 (subd. [4], pars, [b], [d], [e]) of the New York Fish and Game Law, setting forth the powers' of a conservation officer, among other things, provides:
“ § 380. Powers and duties of enforcement officers. * * *
“ (4) Officers named in subdivision (1) shall have power:
*242 “ (b) To search without search warrant any boat or vehicle of any kind, any box, locker, basket, creel, crate, game bag, package or any container of any nature and the contents of any building other than a dwelling whenever they have cause to believe that any provision of this article or of any law for the protection of fish, shellfish, Crustacea, wildlife, game or protected insects has been or is being violated, and to use such force as may be necessary for the purpose of examination and search; * * *
“(d) To arrest without warrant any person committing in their presence a misdemeanor under the Conservation Law and to take such person immediately before a magistrate having jurisdiction for trial;
“(e) To seize as evidence without warrant any fish, shellfish, Crustacea, wildlife, game, or parts thereof, protected insects or plumage as defined in Section 346, whenever they have cause to believe it is possessed or transported in violation of law, or it bears evidence of illegal taking, or it is possessed or transported under circumstances making the possession or transportation presumptive evidence of illegal taking”.
The Fourth Amendment to the United States Constitution secures the people in their right against unreasonable searches and seizures of their persons, houses, papers and effects, and prohibits the issuance of warrants except upon probable cause supported by oath or affirmation, describing the place to be searched or the persons and things to be seized.
Much has been written of late defining the circumstances and conditions under which a peace officer may make a search and seizure without a warrant. In most of the cases, the search or seizure was not made pursuant to a direct authorization to make a search under specified circumstances. The question presented to the court in most of these cases was whether or not the search or seizure was made contemporaneous with and incidental to a lawful arrest (Preston v. United States, 376 U. S. 364; Beck v. Ohio, 379 U. S. 89; United States v. Rabinowitz, 339 U. S. 56; Mapp v. Ohio, 367 U. S. 643; People v. Loria, 10 N Y 2d 368), the rationale of the courts as enunciated in these cases being that if the search and seizure was in fact made incidental to and contemporaneous with a lawful arrest, it met the constitutional standards of “ reasonableness.” The courts therefore looked to the statutes authorizing an arrest by a peace officer without a warrant (e.g., Code Grim. Pro., § 177) to determine whether, under the circumstances, a lawful arrest was made. These arrest statutes generally authorized the arrest without an arrest warrant when the peace officer has “ probable cause ” *243 or “reasonable grounds” to believe that a crime has been committed. Inquiry was then made to determine whether on the facts in evidence the officer did have such probable cause or reasonable grounds to believe that the crime had been committed. In these cases the test was not whether they had reasonable grounds to believe that the specific subject matter of their search or seizure would be found. In fact, the cases are replete with instances where evidence of entirely different crimes was discovered, and these items were held admissible into evidence in the subsequent prosecution of such different crimes, even though the searching officer had no knowledge of the defendant’s involvement in such other crime.
In the case at bar, we are dealing with a direct authorization by the Legislature to a specified class of peace officers to make searches of specific objects and places without a warrant when they have “ cause to believe ” that any provisions of the Fish and Game Law or any law for the protection of shellfish, etc., have been or are being violated.
The criteria under this statute are not whether the officers then and there were in a position to make a lawful arrest or whether the search was made incidental to and contemporaneous with a lawful arrest, but rather, whether or not the officers had cause to believe that a provision of the Fish and Game Law was being violated. I would assume that the Legislature intended to use the phrase “ cause to believe ” as synonymous with “ probable cause” or “reasonable grounds to believe.” Certainly, the Legislature cannot be presumed to authorize any action that would contravene the provisions of the United States Constitution prohibiting “ unreasonable ” searches without a warrant. Therefore, a determination must nevertheless be made as to whether the search under all of the circumstances was reasonable.
While, as indicated, the statute here involved is distinguishable from the ordinary cases involving the legality of the arrest, the same tests and standards used in the latter cases to determine the reasonableness of the search and question to probable cause are applicable to the case at bar.
The People had the privilege of nondisclosure of the identity of their informant. This is essential in “ the furtherance and protection of the public interest in effective law enforcement ” and it “ recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.” (Roviaro v. United States, 353 U. S. 53, 59; People v. Malinsky, 15 N Y 2d 86; People v. White, 16 N Y 2d 270.)
*244 The rule enunciated in People v. Malinsky (supra) and People v. White (supra) is that if, without the alleged informer’s information, there was probable cause to believe that a crime was being committed, or had been committed, the People are not required to reveal the identity of the informant. In the case at bar, there is not sufficient evidence independent of that provided by the informant to justify the conclusions that the officer had reasonable grounds to believe that the provisions of the Fish and Game Law were being violated before they entered upon the private property. Aside from the information furnished by their informant, the only facts that the officers had before them at this point was that two men, one of whom could be identified as having had a clamming license, were unloading bags from a truck into a garage at the end of the driveway. At this point, they could not have known what was in the bags. It was not until they had entered upon the private property that the contents of the bags were actually observed. It was then for the first time that they were able to determine as a fact that these were untagged bags of clams and that the clams were undersized.
The factual situation here is similar to that in People v. Malinsky (supra). In that case, the officer saw cartons of stolen merchandise being loáded on a truck, but had no independent knowledge of what was in the unmarked cartons or that the defendants were wrongfully on the premises. The Court of Appeals there held that the police officer did not have independent, reasonable grounds to believe that a crime was being committed. In the case at bar, the defendants were rightfully on the premises, and there is no evidence before the court independent of that of the informant to furnish a basis for finding that the officers had reasonable grounds to believe that the Fish and Game Law was being violated before they entered upon the private property.
The motion to suppress the evidence seized is therefore granted, and the evidence is suppressed and shall not be used by the People upon the trial of the action.